UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

JAY CONNOR, individually
and on behalf of a class of all persons and
entities similarly situated,

    Plaintiffs,

vs.    Case No.    2:25-cv-01655-DCN

CARE TALK HEALTH FL, PA,
and
KENNETH RICE,

    Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff Jay Connor brings this action alleging a violation of the TCPA for contact his number that he placed on the National Do Not Call Registry.

4. The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

5. The SCTPPA prohibits a company from making a call to a South Carolina telephone number that had been registered on the Do Not Call Registry, as Mr. Connor's was prior to receiving the call.

6. Mr. Connor and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Connor brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

7. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

8. Plaintiff Jay Connor resides in Charleston County, South Carolina.

9. Defendant Care Talk Health FL, PA is a Florida Professional Association.

10. Defendant Kenneth Rice is a doctor and an employee of Defendant Care Talk.

### Jurisdiction & Venue

11. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendants.

12. The Court has specific personal jurisdiction over the defendants because the calls at issue were made into this District.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the calls to Mr. Connor—occurred in this District.

### Statutory Background

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

16. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

17. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

18. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

19. FCC regulations also expressly require companies that engage in telemarketing to implement certain policies and procedures for maintaining an internal do not call list. 47 C.F.R. § 64.1200(d).

20. Courts across the country have held that the 47 U.S.C. § 227(c)(5) provides a private right of action for claims premised on violations of the TCPA implementing regulations promulgated pursuant to 47 U.S.C. §§ 227(c)(1)-(4), including for example claims under 47 C.F.R. § 64.1200(d).

21. To engage in telemarketing, a company's do not call list procedures must satisfy six specific minimum requirements. 47 C.F.R. §§ 64.1200(d)(1)-(6).

22. One of them is maintaining an internal do not call list. *Id*. at § (d)(6).

23. Another is training personnel regarding the existence and use of the internal do not call list. *Id*. at § (d)(2).

24. And still another is recording do not call requests and complying with them. *Id*. at § (d)(3).

25. If a company fails to satisfy any one of these requirements, it is not entitled to engage in telemarketing (and violates the law by doing so), regardless of whether it satisfies all of the regulation's other requirements.

26. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The SCTPPA

27. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

28. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

29. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80.

**Factual Allegations**

Calls to Mr. Connor

30. Mr. Connor is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

31. Mr. Connor's telephone number, (843) XXX-XXXX has been on the National Do Not Call Registry since 2009.

32. That telephone number is for personal calls only.

33. That telephone number is the Plaintiff's residential line.

34. That telephone number is not used for business purposes.

35. Despite this, the Plaintiff received at least nine telemarketing calls from the Defendants.

36. The Plaintiff never provided his prior express written consent to receive telemarketing calls from the Defendants.

37. The first such call came in on October 16, 2024 at 5:34 PM from the Caller ID 843-557-1286 and was an individual named "David" calling to offer the plaintiff a genetic saliva test. The Plaintiff hung up.

38. The next such call came in on October 17, 2024 at 1:22 PM from a similar Caller ID 843-557-1794 and was an individual named "Brian" calling to offer the plaintiff a genetic saliva test. The Plaintiff hung up.

39. The next such call came in on October 29, 2024 at 3:27 PM from Caller ID 843-388-7187. The caller stated that he was looking to speak with "James Connor," and then disconnected the call.

40. Thereafter, on November 8, 2024 at 11:12 AM, the Plaintiff received a call from 843-557-5397. During this call, the caller stated that he was calling to offer the plaintiff a genetic saliva test and referenced a "previous call" on the 29th, where he was unable to reach the Plaintiff.

41. The Plaintiff was ultimately transferred to an individual named "Katie," who confirmed that she was a nurse for Defendant Rice. However, the call disconnected shortly after "Katie" came on the line. During this call, the Plaintiff requested not to receive calls from the Defendants.

42. A few minutes after the disconnection, the Plaintiff received a call from 813-652-0610 at 12:17 PM. The representative reconnected Plaintiff to "Katie" again, the same individual who spoke with the Plaintiff on the previous call.

43. During this very call, Katie confirmed that she worked as a nurse for Defendant Care Talk. The Plaintiff also spoke to co-Defendant Rice, who also confirmed that he worked for Defendant Care Talk.

44. Thereafter, at 1:47 PM, the Plaintiff received a call from 843-557-5397. As soon as the Plaintiff answered, the line disconnected.

45. The Plaintiff then immediately got a call from the same number. It was an individual that the Plaintiff spoke with on the previous calls that same day that wanted to re-record the Plaintiff's information to get it on tape. The Plaintiff declined and reminded the caller of the previous request not to call again, which the caller stated that he remembered and acknowledged.

46. Despite this clear indication he did not want to receive calls, the Plaintiff received another call at 2:48 PM from 843-377-2793.

47. It was "Eddie," a "supervisor" of the individual in the previous calls and stated that he was the "coordinator" for "Dr. Rice with Care Talk" and as such was required to obtain a recording of the Plaintiff's Medicare information, and was quite insistent on doing so after the previous refusal.

48. Finally, the Plaintiff received a call from 448-231-2748 at 3:20 PM on November 13, 2024. It was an individual named "Janet" who was calling to say that the Plaintiff would not be receiving any services because the Plaintiff's number was on the Do Not Call List.

49. The fact that the Defendants made the calls is confirmed by the fact that Defendant Rice billed Medicare for services allegedly "rendered" on November 8, 2024, the date of the calls in which Plaintiff spoke to Defendant Rice and his nurse:

**Date of service**
11/08/24

**Provider**
KENNETH MACLEOD RICE

**Provider address**
5955 SOMERSET CT
SUWANEE, GA 30024-3383

**Claim processed on**
11/15/24

**Practicing providers**
Not available

**Medicare Summary Notice (MSN)**
Order MSN

Feedback

## Services

---

**Service (procedure code)**
ANNUAL ALCOHOL MISUSE SCREENING, 5 TO 15 MINUTES (G0442)

| Qty | Provider charged | Medicare approved |
|---|---|---|
| 1 | $61.41 | $0.00 |

| Applied to deductible | Coinsurance | You may be billed |
|---|---|---|
| $0.00 | $0.00 | $0.00 |

**Service (procedure code)**
ANNUAL DEPRESSION SCREENING, 5 TO 15 MINUTES (G0444)

| Qty | Provider charged | Medicare approved |
|---|---|---|
| 1 | $61.41 | $18.98 |

| Applied to deductible | Coinsurance | You may be billed |
|---|---|---|
| $0.00 | $0.00 | $0.00 |

50. Plaintiff was never provided an "alcohol misuse screening" or "annual depression screening" for which the Defendants billed Medicare.

51. Indeed, the requirements for both such screenings require the doctor to administer a "standardized instrument" in a primary care setting with clinical staff who can advise the physician of screening results and who can facilitate and coordinate referrals to treatment as necessary.

52. The calls were unwanted.

53. The calls were nonconsensual encounters.

54. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

55. Plaintiff never provided his consent or requested the calls.

56. Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls disturbed them at early hours of the day, occupied their telephone message space, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## Class Action Allegations

43. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

44. The classes of persons Plaintiff propose to represent are tentatively defined as:

**National Do Not Call Registry Class**:

> All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at

any time in the period that begins four years before the date of filing this Complaint to trial.

**Internal Do Not Call Registry Class**:

All persons in the United States whose (1) previously requested that their telephone numbers no longer at least 31 days previously, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**SCTPPA Class**:

All persons with a South Carolina area code to whom (a) at any time from four years prior to the filing of the Complaint (b) Defendants, or someone acting on their behalf (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

45.   Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

46.   The classes as defined above are identifiable through phone records and phone number databases that will be obtained through discovery.

47.   The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day.  Individual joinder of these persons is impracticable.

48.   Plaintiff is a member of both classes.

49.   There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

   a.   Whether the Defendants violated the TCPA by calling individuals on the National Do Not Call Registry or that had asked to previously no longer receive calls;

   b.   Whether the Defendants placed calls without obtaining the recipients' prior consent for the call;

   c. Whether the Defendants violated the SCTPPA by making calls to South Carolina telephone numbers registered with the National Do Not Call Registry; and

   d. Whether Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

 50. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

 51. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

 52. In fact, the Plaintiff have foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

 53. The actions of the Defendants are generally applicable to the classes and to the Plaintiff.

 54. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

 55. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

## Legal Claims

### Count One:

**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

56. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

57. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

58. Defendants' violations were negligent, willful, or knowing.

59. As a result of Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

60. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**Count Two:**
**Violation of the SCTPPA**

61. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to an area code of the state of South Carolina to a number that is registered on the National Do Not Call Registry.

63. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA, as well as attorneys' fees and costs. S.C. Code § 37-21-80.

### Count Three:
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

64. Plaintiff repeats the prior allegations of this Complaint and incorporate them by reference herein.

65. Defendants placed numerous calls for telemarketing purposes to Plaintiff and Internal DNC Class Members' telephone numbers.

66. Defendants did so despite not having a written policy pertaining to "do not call" requests.

67. Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list.

68. Defendants did so despite not recording or honoring "do not call" requests.

69. Defendants placed two or more telephone calls to Plaintiffs and Internal DNC Class members in a 12-month period.

70. Plaintiff and Internal DNC Class members are entitled to an award of up to $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

71.     Plaintiff and Internal DNC Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### Relief Sought

For themselves and all class members, Plaintiff request the following relief:

A.     Certification of the proposed classes;

B.     Appointment of the Plaintiff as representatives of the classes;

C.     Appointment of the undersigned counsel as counsel for the classes;

D.     A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and SCTPPA;

E.     An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiff and the classes of damages, attorneys' fees, and costs, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 12th day of March, 2025.

                                    PLAINTIFF,
                                    By his attorneys,

                      By:     _s/ Dave Maxfield_____
                              David A. Maxfield, Fed ID 6293
                              P.O. Box 11865
                              Columbia, SC 29211
                              803-509-6800

855-299-1656 (fax)  
dave@consumerlawsc.com

Anthony I. Paronich  
Paronich Law, P.C.  
350 Lincoln Street, Suite 2400  
Hingham, MA 02043  
(508) 221-1510  
anthony@paronichlaw.com