**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

JAY CONNOR, individually
and on behalf of a class of all persons and
entities similarly situated,

        Plaintiffs,

vs.                                                                    Case No. 2:25-cv-01655-DCN

GKIM TELEHEALTH LLC,
RELIABLE OUTSOURCING, LLC,
AND
PRINCE LABORATORIES, LLC

        Defendant.

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

**Preliminary Statement**

1.     "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     Plaintiff Jay Connor brings this action alleging a violation of the TCPA for contacts to his number that he placed on the National Do Not Call Registry.

4.     The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq.*

5.     The SCTPPA prohibits a company from making a call to a South Carolina telephone number that had been registered on the Do Not Call Registry, as Mr. Connor's was prior to receiving the call.

6.     Mr. Connor and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Connor brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

7.     A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

8.     Plaintiff Jay Connor resides in Charleston County, South Carolina.

9.     Defendant GKIM Telehealth LLC is a Delaware marketing company.

10.     Defendant Reliable Outsourcing, LLC is a Florida marketing company.

11.     Defendant Prince Laboratories is a laboratory that processes genetic testing kits which would have been sold on the subject calls.

### Jurisdiction & Venue

12.     The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendants.

13.     The Court has specific personal jurisdiction over the Defendants because the calls at issue were made into this District.

14.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the calls to Mr. Connor—occurred in this District.

### Statutory Background

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing …

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

17.     § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

19.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

20.     FCC regulations also expressly require companies that engage in telemarketing to implement certain policies and procedures for maintaining an internal do not call list. 47 C.F.R. § 64.1200(d).

21.     Courts across the country have held that the 47 U.S.C. § 227(c)(5) provides a private right of action for claims premised on violations of the TCPA implementing regulations promulgated pursuant to 47 U.S.C. §§ 227(c)(1)-(4), including for example claims under 47 C.F.R. § 64.1200(d).

22.     To engage in telemarketing, a company's do not call list procedures must satisfy six specific minimum requirements. 47 C.F.R. §§ 64.1200(d)(1)-(6).

23.     One of them is maintaining an internal do not call list. *Id.* at § (d)(6).

24.     Another is training personnel regarding the existence and use of the internal do not call list. *Id.* at § (d)(2).

25.     And still another is recording do not call requests and complying with them. *Id*. at § (d)(3).

26.     If a company fails to satisfy any one of these requirements, it is not entitled to engage in telemarketing (and violates the law by doing so), regardless of whether it satisfies all of the regulation's other requirements.

27.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).


The SCTPPA

28.     On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

29.     The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

30.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA.  S.C. Code § 37-21-80.

### Factual Allegations

Calls to Mr. Connor

31.     Mr. Connor is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

32.     Mr. Connor's telephone number, (843) XXX-XXXX has been on the National Do Not Call Registry since 2009.

33.     That telephone number is for personal calls only.

34.     That telephone number is the Plaintiff's residential line.

35.     That telephone number is not used for business purposes.

36.     Despite this, the Plaintiff received at least nine telemarketing calls from the Defendants, or from the call centers they retained.

37.     In sum, Plaintiff alleges a call center "train" by which Prince Laboratories' services would have been promoted, which started with former Defendant Care Talk, which hired Defendant GKIM to place calls on its behalf. In turn, GKIM hired another call center, Defendant Reliable, whom it hired as a subvendor to place calls.

38.     Although the Plaintiff previously settled with GKIM, GKIM has been in default of its obligations under the parties' agreement, including to turn over certain information pursuant to a subpoena, pertaining to Reliable and Prince.

39.     The Plaintiff never provided his prior express written consent to receive telemarketing calls from the Defendants.

40.     The first such call came in on October 16, 2024 at 5:34 PM from the Caller ID 843-557-1286 and was an individual named "David" calling to offer the plaintiff a genetic saliva test. The Plaintiff hung up.

41.     Upon information and belief, and based upon information revealed to the Plaintiff throughout the course of this litigation, this saliva test would have been fulfilled and processed by Defendant Prince.

42.     Indeed, upon information and belief, Defendant GKIM and Reliable's relationship with Prince operates in a similar manner described in a recent Department of Justice press release with respect to a similar genetic testing laboratory, where genetic testing laboratories like Prince offer and pay "kickbacks to marketers in exchange for their referral of Medicare beneficiaries' DNA samples, personally identifiable information (including Medicare numbers)

and signed test orders from medical providers authorizing the medically unnecessary genetic tests. As part of the scheme, the marketers engaged other companies to solicit Medicare beneficiaries through telemarketing and to engage in "doctor chase," i.e., to obtain the identity of beneficiaries' primary care physicians and pressure them into approving genetic testing orders for patients who purportedly had already been "qualified" for the testing during telephone calls conducted by non-medical personnel at one of the companies retained by the marketers — not by their physicians." *Former NFL Player and Laboratory Owner Convicted in $328M Genetic Testing Fraud Scheme*, DEP'T. OF JUSTICE (Feb. 20, 2026), https://www.justice.gov/opa/pr/former-nfl-player-and-laboratory-owner-convicted-328m-genetic-testing-fraud-scheme.

43.     The next such call came in on October 17, 2024 at 1:22 PM from a similar Caller ID 843-557-1794 and was an individual named "Brian" calling to offer the plaintiff a genetic saliva test. The Plaintiff hung up.

44.     The next such call came in on October 29, 2024 at 3:27 PM from Caller ID 843-388-7187. The caller stated that he was looking to speak with "James Connor," and then disconnected the call.

45.     Thereafter, on November 8, 2024 at 11:12 AM, the Plaintiff received a call from 843-557-5397. During this call, the caller stated that he was calling to offer the plaintiff a genetic saliva test and referenced a "previous call" on the 29th, where he was unable to reach the Plaintiff.

46.     The Plaintiff was ultimately transferred to an individual named "Katie," who confirmed that she was a nurse for Kenneth Rice, M.D., who was a provider for the former Defendant Care Talk's client.

47.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

48.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

49.     The FCC has instructed that sellers such as Prince may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such GKIM and Reliable:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

50.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

51.     Prince is liable for Defendant GKIM and Reliable's conduct and telemarketing calls placed by GKIM and Reliable and which would have, upon information and belief, resulted in sales for Prince and its agents and generated customers for Prince and its agents.

52.     Moreover, with full knowledge that GKIM and Reliable were violating the TCPA do not call registry provisions and prerecorded call provisions, Prince did nothing.

53.     Prince thus had full knowledge of GKIM and Reliable's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior.

54. The aforementioned facts also demonstrate that Prince failed to supervise GKIM and Reliable or enforce their compliance with applicable laws and regulations.

55. Prince was interested in having a pipeline that would prescribe and steer patients to genetic testing kits using its testing services.

56. To do so, Prince worked with GKIM and Reliable to orchestrate an *en masse* telemarketing campaign whose aim was to sell genetic testing kits for which Prince would run the laboratory services for the kit.

57. However, with Reliable' s lack of participation in this case, and GKIM's corresponding refusal to respond to subpoenas, the Plaintiff is as yet ignorant as to the exact nature and language of the contractual relationship between Prince on one hand and Reliable and GKIM on the other.

58. That lack of information notwithstanding, GKIM identified Prince as an entity that "may or may not have relevant information regarding the subject matter of the Action."

59. Finally, Prince could have terminated GKIM and Reliable.

60. It did not.

61. A reasonable seller like Prince whose agents are making calls would investigate into the reasons why such calls violated the TCPA and why the parties who pointed the finger at Prince have subsequently refused to spill the beans as to the nature of their relationship, and, in Reliable's case, failed to respond to this lawsuit.

62. It did not.

63. As such, Prince knowingly ratified GKIM and Reliable's conduct.

64. Prince also ratified GKIM and Reliable's conduct because, with knowledge that it was hiring GKIM and Reliable to place unlawful calls, they accepted the fruits of those calls, the genetic kits for testing.

65. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances

pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

66.     The calls were unwanted.

67.     The calls were nonconsensual encounters.

68.     Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

69.     Plaintiff never provided his consent or requested the calls.

70.     Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls disturbed them at early hours of the day, occupied their telephone message space, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

### Class Action Allegations

43.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

44.     The classes of persons Plaintiff propose to represent are tentatively defined as:

**National Do Not Call Registry Class**:

> All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**SCTPPA Class**:

All persons with a South Carolina area code to whom (a) at any time from four years prior to the filing of the Complaint (b) Defendants, or someone acting on their behalf (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

45. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

46. The classes as defined above are identifiable through phone records and phone number databases that will be obtained through discovery.

47. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

48. Plaintiff is a member of both classes.

49. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

a. Whether the Defendants violated the TCPA by calling individuals on the National Do Not Call Registry or that had asked to previously no longer receive calls;

b. Whether the Defendants placed calls without obtaining the recipients' prior consent for the call;

c. Whether the Defendants violated the SCTPPA by making calls to South Carolina telephone numbers registered with the National Do Not Call Registry; and

d. Whether Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

50. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

51. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the

class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

52.     In fact, the Plaintiff have foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

53.     The actions of the Defendants are generally applicable to the classes and to the Plaintiff.

54.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

55.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

## Legal Claims

**Count One:**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

56.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

57.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

58.     Defendants' violations were negligent, willful, or knowing.

59.     As a result of Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

60.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**Count Two:**
**Violation of the SCTPPA**

61.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.     The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to an area code of the state of South Carolina to a number that is registered on the National Do Not Call Registry.

63.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA, as well as attorneys' fees and costs. S.C. Code § 37-21-80.

**<u>Relief Sought</u>**

For themselves and all class members, Plaintiff request the following relief:

A.     Certification of the proposed classes;

B.     Appointment of the Plaintiff as representatives of the classes;

C.     Appointment of the undersigned counsel as counsel for the classes;

D.     A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and SCTPPA;

E.     An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiff and the classes of damages, attorneys' fees, and costs, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this  day of March, 2026.

PLAINTIFF,
By his attorneys,

By:     _s/ Dave Maxfield_____
David A. Maxfield, Fed ID 6293
P.O. Box 11865
Columbia, SC 29211
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com